FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JAN 02 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DYANA TENORIO RIOS, on behalf of herself,
FLSA Collective Plaintiffs, and the Class,

                Plaintiff,

- against –

B B Q CHICKEN DON ALEX, INC.
    d/b/a DON ALEX,
POLLOS A LA BRASAS 2014 CORP.
    d/b/a DON ALEX,
JOHN DOE CORP.
    d/b/a DON ALEX, and
DIAVI OSORES,

                Defendants.
-----------------------------------------------------------x

MEMORANDUM AND ORDER
16-CV-6630

GLASSER, Senior United States District Judge:

Dyana Tenorio Rios ("Plaintiff") brings this this action against BBQ Chicken Don Alex, Inc. doing business as "Don Alex"; Pollos a La Brasas 2014 Corp. doing business as "Don Alex"; John Doe Corp. doing business as "Don Alex"; and Diavi Osores ("Osores" and, collectively with the corporate defendants, the "Defendants"). Plaintiff alleges violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). Plaintiff also alleges that Defendants violated the NYLL's spread-of-hours premium provision and its wage-notice and wage-statement requirements. Upon Defendants' failure to appear or otherwise respond to the complaint, Plaintiff requested, and the Clerk of the Court entered, a certificate of default. ECF 14. Before the Court is Plaintiff's motion for default judgment, ECF 15, in which Plaintiff seeks an award in the amount of $100,723.50, ECF 16-7. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

1

## BACKGROUND

Plaintiff is an individual residing in Queens County, New York. ECF 1 ("Compl.") ¶ 5. Plaintiff alleges that Defendants operate three restaurants in Queens—two in Jackson Heights and one in Flushing—as a single integrated enterprise under the common trade name "Don Alex." *Id.* ¶ 6. Plaintiff further alleges that Osores is the owner and chief executive officer of each of the corporate defendants. *Id.* ¶ 8. According to the complaint, Osores exercises (and also delegates) the power to hire and fire employees; supervises and controls employees' work schedules and employment conditions; and determines the rate and method of employees' compensation. *Id.* Plaintiff alleges, in addition, that Osores is regularly present at the Don Alex restaurants and directly reprimands employees who are not properly performing their duties. *Id.* Plaintiff also alleges that, at all relevant times, each of the corporate defendants was an "enterprise engaged in commerce" within the meaning of the FLSA. *Id.* ¶ 9.

According to the complaint, Defendants employed Plaintiff as a waitress at one of the Don Alex restaurants during three separate time periods: (i) December 2013 through August 2014; (ii) December 2014 through July 2015; and (iii) February 2016 through October 13, 2016. *Id.* ¶¶ 22-25. Regarding her scheduled hours and hours worked during these time periods, Plaintiff alleges as follows:

(i) From December 2013 through August 2014, Plaintiff was scheduled to work from 2:00 p.m. to 11:00 p.m. on Monday, Tuesday, Thursday, Saturday, and Sunday, for a total of 45 hours per week. *Id.* ¶ 23. However, Plaintiff in fact worked until 12:00 a.m. each workday, for a total of 50 hours per week. *Id.*

(ii) From December 2014 through July 2015, Plaintiff was scheduled to work from 2:00 p.m. to 11:00 p.m. on Monday, Thursday, Friday, Saturday, and Sunday and from 10:00 a.m. to 7:00 p.m. on Tuesday, for a total of 54 hours per week. *Id.* ¶ 24. However, Plaintiff in fact always worked until 12:00 a.m. on Monday, Thursday, Friday, Saturday, and Sunday and until 7:30 p.m. on Tuesday, for a total of 59.5 hours per week. *Id.*

> (iii) From February 2016 until October 13, 2016, Plaintiff's scheduled hours and hours worked were the same as they were from December 2014 through July 2015—i.e., she was scheduled to work 54 hours per week, but in reality she worked 59.5 hours per week. *Id.* ¶ 25.

Plaintiff alleges that, throughout her employment, she was paid for her scheduled hours only and, moreover, that she was paid at the below-minimum-wage hourly rate of only $3.00 per hour, even for hours worked over 40 in a workweek. *Id.* ¶¶ 26-29. Plaintiff further alleges that she was not paid a spread-of-hours premium, *id.* ¶ 30, and that she never received any notice that Defendants were claiming a tip credit as to her compensation, *id.* ¶ 31. In addition, Plaintiff alleges that Defendants did not track the amount of tips received daily, in violation of the NYLL, and did not provide her with wage notices or proper wage statements as required by the NYLL. *Id.* ¶¶ 36-37.

Plaintiff filed the complaint in this action on November 30, 2016. A copy of the summons and complaint were served on Defendants via personal service on Osores and through the New York Secretary of State as to the corporate defendants, on December 28, 2016 and February 3, 2017, respectively. ECF 6, 9, 10. With no answer timely filed by Defendants, Plaintiff requested entry of a certificate of default, which was entered by the Clerk of the Court on April 20, 2017. ECF 14. Plaintiff filed her motion for default judgment on May 12, 2017, ECF 15, and served the motion on Defendants via first class mail on August 23, 2017, ECF 18. In the motion for default judgment, Plaintiff seeks the following as relief: $47,861.75 as compensatory damages, for her unpaid wages; $47,861.75 as New York State liquated damages; and $5,000 in statutory penalties, for a total award of $100,723.50. ECF 16-7. Defendants have not opposed or otherwise responded to the motion, nor have they appeared in this action.

3

## DISCUSSION

### I. Liability

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining a default judgment: first, the Clerk of Court enters the party's default pursuant to Rule 55(a), and second, if the defaulting party fails to set aside the entry of default pursuant to Rule 55(c), the plaintiff must apply for a default judgment pursuant to Rule 55(b). *See Finkel* v. *Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing *Enron Oil Corp.* v. *Diakuhara*, 10 F.3d 90, 95-96 (2d Cir.1993)). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc.* v. *E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Nonetheless, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera* v. *ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). Indeed, courts must "supervise default judgments with extreme care to avoid miscarriages of justice." *Erwin DeMarino Trucking Co.* v. *Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y.1993)). The plaintiff has the burden of establishing entitlement to a default judgment, which is not obtained "as a matter of right simply because a party is in default." *Finkel*, 970 F. Supp. 2d at 118-19.

As discussed below, the unchallenged facts in the complaint establish Defendants' liability as to Plaintiff's minimum-wage and overtime claims, as well as Plaintiff's entitlement to statutory damages for Defendants' failure to comply with the NYLL's wage-notice and wage-statement requirements. The facts as alleged do not make out a claim for violation of the NYLL's spread-of-hours premium provision, however.

### A. Minimum-Wage and Overtime Claims

To state a FLSA minimum-wage or overtime claim, a plaintiff must allege that (i) she was the defendant's employee; (ii) her work involved interstate activity; and (iii) she worked hours for which she did not receive minimum wage and/or overtime wages. *Pineda v. Tokana Cafe Bar Restorant Inc.*, 16-cv-1155, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30, 2017) (citing *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). For a NYLL minimum-wage or overtime claim, the analysis is the same, except that the plaintiff need not allege "a nexus with interstate commerce or a minimum amount of annual sales." *Pineda v. Tokana Cafe Bar Restorant Inc.*, 16-cv-1155, 2017 WL 1194242, at *2 n.2 (S.D.N.Y. Mar. 30, 2017) (citing *Alvarez v. Michael Anthony George Constr. Corp.*, 15 F. Supp. 3d 285, 291 (E.D.N.Y. 2014)).

Here, Plaintiff has alleged facts that, accepted as true by the Court, establish her minimum-wage and overtime claims. First, Plaintiff has sufficiently alleged that Defendants operated the Don Alex restaurants as a single integrated enterprise and that she was employed by that enterprise. Under the "single integrated enterprise" test, courts may treat a group of distinct but closely affiliated entities as a single employer for FLSA purposes. *See Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). "[S]eparate corporations under common ownership and management" are a common example of such a single integrated enterprise. *Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013). In determining whether separate entities should be considered a single employer under this standard, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez*, 29 F. Supp. 3d at 367. In this case, in support of her assertion that the corporate defendants operate the Don Alex restaurants as a single integrated enterprise, Plaintiff alleges that (i) the corporate defendants are

commonly owned by the individual defendant, Osores, who also is the chief executive officer of each corporate defendant; (ii) the Don Alex restaurants "share a common logo, share a common feel and serve similar menu items"; and (iii) "[s]upplies and employees are interchangeable between the [restaurants]." Compl. ¶¶ 6-8. The Court finds these unchallenged allegations sufficient to establish that the corporate defendants are a single employer for FLSA purposes. Moreover, Plaintiff has sufficiently alleged that she was employed by Defendants at one of their Don Alex restaurants. *See* Compl. ¶¶ 6(c), 9-10, 22-25.

Second, Plaintiff has sufficiently alleged that her work involved interstate activity. An employee is covered by the FLSA if she is "employed in an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. §§ 206, 207(a)(1), with "commerce" defined as "commerce . . . between any State and any place outside thereof," *id.* § 203(b). Here, Plaintiff has alleged that Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA. Compl. ¶ 9. Plaintiff has also specifically alleged that "Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods within the meaning of the FLSA." *Id.* ¶ 40. Plaintiff has therefore properly alleged this element of her FLSA claims. *See, e.g., Pineda*, 2017 WL 1194242, at *2 ("Plaintiffs here have alleged that Little Rascal is an enterprise engaged in commerce, therefore their work is covered by the FLSA."); *Zhong* v. *August August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) (finding this element satisfied by plaintiff alleging defendant was "an enterprise covered by the FLSA as defined by [the relevant FLSA provisions]").

Third, Plaintiff has sufficiently alleged that she worked hours for which she did not receive minimum wage or overtime wages. As described above, Plaintiff's complaint details the hours she worked and the wages she received. As alleged, throughout her employment Plaintiff was paid

6

wages at an hourly rate of $3 per hour, a rate well below both the federal and state minimum wage.[1] *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1) (McKinney). Moreover, Plaintiff regularly worked over forty hours in a week, yet she was not paid at the required overtime rate—one and one-half times the regular rate—for work performed in excess of forty hours a week. Both the FLSA and the NYLL permit an employer, under certain conditions, to pay an employee an hourly wage below the standard minimum wage if the employee receives tips from customers for his or her services. *See* 29 U.S.C. § 203(m), 206(a)(1); N.Y. Lab. Law § 652(4) (McKinney); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3; *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). But an employer may not claim a "tip credit" under the FLSA unless it has informed the employee of the FLSA provisions permitting the tip credit. *See Inclan*, 95 F. Supp. 3d at 497 (citing 29 U.S.C. § 203(m)). The NYLL similarly imposes notice requirements on an employer that wishes to take a tip credit. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2; *Inclan*, 95 F. Supp. 3d at 498. And under both the FLSA and the NYLL, the employer bears the burden of showing that it complied with the tip-credit notice requirements. *See Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 673 (S.D.N.Y. 2017). Defendants here obviously have not carried that burden, as they have not appeared, and Plaintiff has also specifically alleged that Defendants did not comply with the tip-credit notice requirements. *See* Compl. ¶¶ 31, 35-37. Accordingly, Plaintiff's allegations, accepted as true, establish Defendants' liability for failure to pay minimum and overtime wages in violation of the FLSA and the NYLL.

Finally, Plaintiff's allegations also sufficiently establish Osores's individual liability. Courts have held corporate officers and owners individually liable as employers under the FLSA

---

[1] Plaintiff also alleges that she was paid only for her scheduled hours; she was not paid at all for the additional, unscheduled hours that she regularly worked. *See* Compl. ¶ 26.

"'in situations where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions.'"[2] *Rodriguez* v. *Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (quoting *Lopez* v. *Silverman*, 14 F. Supp. 2d 405, 412 (S.D.N.Y. 1998)). All of those circumstances are alleged to have been present here: Plaintiff alleges that Osores (i) owns the corporate defendants and acts as their chief executive officer, "exercis[ing] operational control" over all their employees; (ii) exercises (and also delegates) the power to hire and fire employees; (iii) supervises and controls employees' work schedules and employment conditions; and (iv) determines the rate and method of employees' compensation. Compl. ¶ 8. The Court finds that these allegations, accepted as true, establish that Osores was Plaintiff's employer under the FLSA and NYLL and thus jointly and severally liable, along with the corporate defendants, for Defendants' minimum-wage and overtime violations.

### B. Wage-Notice and Wage-Statement Claims

The NYLL obligates an employer to provide its employees a written notice advising each employee of the rate and basis of his or her pay, among other information. N.Y. Lab. Law § 195(1)(a) (McKinney). If an employer fails to provide an employee with such a notice within ten business days of his or her first day of employment, the employee "may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars." *Id.* § 198(1-b) (version in effect prior

---

[2] "'Courts have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" *Fermin* v. *Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (quoting *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011)).

to Feb. 27, 2015).[3] The NYLL also obligates an employer to "furnish each employee with a statement with every payment of wages," listing, among other things, "the dates of work covered by that payment of wages" and the "rate or rates of pay and basis thereof." *Id.* § 195(3). If an employee is not provided wage statements in accordance with this provision, "he or she shall recover in a civil action damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars." *Id.* § 198(1-d) (version in effect prior to Feb. 27, 2015).[4]

Here, Plaintiff has alleged that Defendants (i) never provided her with the required wage notice and (ii) never provided her with proper wage statements, since the wage statements she did receive reflected an incorrect number of hours worked. *See* Compl. ¶ 37. These allegations, accepted as true, establish that Defendants were violating the wage-notice and wage-statement provisions of the NYLL for the entirety of Plaintiff's employment. Since, as alleged, Plaintiff was

---

[3] The NYLL was amended, effective February 27, 2015, to provide for recovery of damages under this provision up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b) (McKinney). However, New York law disfavors the retroactive application of statutes "absent a 'clear expression of the legislative purpose to justify a retroactive application,'" *Saldana* v. *New Start Grp., Inc.*, No. 14-cv-4049, 2016 WL 3683530, at *1 (E.D.N.Y. July 5, 2016) (quoting *Gold* v. *N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013)). "Courts in this district have not found this 'clear expression of legislative purpose' to apply amendments to Section 198 retroactively, and thus have not done so." *Marin* v. *Apple-Metro, Inc.*, 12-cv-5274, 2017 WL 4950009, at *21 (E.D.N.Y. Oct. 4, 2017) (collecting cases). Moreover, in this motion—notice of which was sent to Defendants via mail service—Plaintiff has requested only $2,500 in damages under this provision, seemingly relying on the prior version of Section 198. *See* ECF 16-5 at 5. Therefore, the Court will apply the prior version of Section 198, which caps damages at $2,500; this version was in effect at the time Plaintiff was hired and for nearly half of her employment with Defendants.

[4] This provision of Section 198, like the wage-notice provision, was amended, effective February 27, 2015, to provide for recovery of damages up to a higher maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d) (McKinney). For the same reasons described in the above footnote, the Court will apply the version of Section 198 in effect at the time of Plaintiff's hiring.

employed by Defendants for well over fifty weeks, she is entitled to $2,500 in damages under Section 198(1-b) and $2,500 in damages under Section 198(1-d), for a total of $5,000 in damages.

### C. Spread-of-Hours Premium Claim

The NYLL provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required herein for any day in which . . . the spread of hours *exceeds* 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.4 (emphasis added); *see also id.* § 146-1.6(a) ("On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."). The "spread of hours" refers to "the length of the interval between the beginning and end of an employee's workday." *Id.* § 146-1.6. While Plaintiff alleges that her workdays "regularly exceeded 10 hours in length," Compl. ¶ 30, this general allegation is belied by the detailed allegations in which she actually lays out her work schedules, *see id.* ¶¶ 22-25. Those detailed allegations reveal that Plaintiff's workdays regularly equaled, but did not exceed, ten hours in length. *See id.* Plaintiff's allegations thus do not support a spread-of-hours premium claim.

### II. Damages

Unlike allegations of liability, allegations pertaining to damages are not deemed admitted upon a defendant's default. *See Greyhound*, 973 F.2d at 158. A plaintiff in search of a default judgment must still prove damages. *See id.* A court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). An evidentiary hearing is not required, however; "[d]etailed affidavits and other documentary evidence can suffice." *Vinas v. Pullini Subsurface Contractors, Inc.*, No. 11 CV 2765, 2012 WL 6641662, at *3 (E.D.N.Y. Oct. 5, 2012) (internal quotation marks omitted), *report and recommendation adopted*,

2012 WL 6633929 (E.D.N.Y. Dec. 20, 2012); *see also Fustok* v. *ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (evidentiary hearing not necessary "as long as [the court] ensure[s] that there [is] a basis for the damages specified").

No evidentiary hearing is necessary here "because the damages resulting from Defendants' minimum wage and overtime violations are 'susceptible of mathematical computation.'" *Velasquez* v. *U.S. 1 Farm Market, Inc.*, 13-cv-634, 2016 WL 2588160, at *11 (D. Conn. May 3, 2016) (quoting *Greyhound*, 973 F.2d at 158). Plaintiff provided in the complaint detailed allegations regarding the hours she worked and the compensation she was paid, *see* Compl. ¶¶ 23-26, allegations that were recently reaffirmed in an affidavit from her counsel, *see* ECF 16 (Seelig Aff.") ¶¶ 16-19. In addition, Plaintiff submitted, in support of her motion for default judgment, an exhibit in which she calculates—based on the hours she worked, the compensation she was paid, and the prevailing minimum wage during the relevant time periods—the amount of unpaid minimum wage and overtime compensation she is owed. ECF 16-5. The Court has reviewed the calculations in this exhibit and hereby adopts them, except as to the alleged spread-of-hours premiums owed. Accordingly, the Court finds that Plaintiff is entitled to $43,224.25 as compensatory damages, for unpaid minimum wage and overtime compensation.

In addition to compensatory damages, Plaintiff seeks liquidated damages. Under both the FLSA and the NYLL, a plaintiff is entitled to liquidated damages in an amount equal to the unpaid minimum wage and overtime compensation. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). A plaintiff may recover liquidated damages under the FLSA or the NYLL, but not both. *See Chowdhury* v. *Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). A liquidated damages award is mandatory except where the defendant "shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for

11

believing its acts or omissions did not violate the FLSA." *Barfield* v. *N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).[5] The employer bears the burden of proof on a good-faith defense, and "the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman* v. *RSR Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). Defendants here, having defaulted, plainly have not carried that burden. The Court therefore finds that Plaintiff is entitled to liquidated damages in an amount equal to her unpaid minimum wage and overtime compensation: $43,224.25.

Finally, for the reasons discussed in section I.B above, Plaintiff is entitled to an additional $5,000 in statutory damages—$2,500 each for Defendants' violations of the wage-notice and wage-statement provisions of the NYLL, respectively.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED as to her spread-of-hours claim—which claim is dismissed—and GRANTED in all other respects. Accordingly, Plaintiff is hereby granted a default judgment against BBQ Chicken Don Alex, Inc., Pollos a La Brasas 2014 Corp., and Diavi Osores—jointly and severally—for compensatory damages in the amount of $43,224.25, NYLL liquidated damages in the amount of $43,224.25, and NYLL statutory damages in the amount of $5,000, amounting in all to an award of $91,448.50.

SO ORDERED.

Dated:       Brooklyn, New York
             January 2, 2018

/s/_____
I. Leo Glasser                                    U.S.D.J.

---

[5] Liquidated damages under the NYLL are similarly mandatory "[u]nless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).